Mark R. Thierman, NV #8285
**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, Nevada  89511
Tel: (775) 284-1500
Fax:  (775) 703-5027
E-mail:  laborlawyer@pacbell.net

Attorneys for Plaintiff and Plaintiff Class

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHNNIE GRIFFIN, on behalf of all other plan participants ,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>CEMENT MASONS ANNUITY TRUST FUNDS FOR NORTHERN NEVADA, BOARD OF TRUSTEES OF CEMENT MASONS ANNUITY TRUST FUNDS FOR NORTHERN NEVADA, and BENEFIT PLAN ADMINISTRATORS, INC. as agents and administrators thereof,<br><br>                    Defendants. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF ERISA'S ANTI-CUTBACK PROVISION,  29 U.S.C. 1054(g),  BREACH OF FIDUCIARY/ CO-FIDUCIARY  DUTY, AND MULTIPLE VIOLATIONS OF ERISA SECTIONS 406 & 408**<br><br>**29 U.S.C. 1001 et seq.** |

///

///

///

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

CLASS ACTION COMPLAINT VIOLATION OF ERISA, 29 U.S.C. §1054(g)

**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

**INTRODUCTION**

1.      Plaintiff is an ERISA plan participant and plan beneficiary who brings this class action against Defendants in their capacities as fiduciaries and/or co-fiduciaries with the power to amend the Cement Masons Annuity Trust Fund of Northern Nevada retirement plan (hereinafter the "Plan" or "Annuity Plan").  The purpose of the lawsuit is to force the trustees to rescind and declare invalid *ab initio* Defendant's June 1, 2010 plan amendments as unlawful under the Anti-Cutback provisions of the Employment Retirement Income Security Act, 29 U.S.C. 1054(g).  For all times relevant herein, Plan Section 3.02(a) has provided that any participant could withdraw his or her retirement funds from the plan, plus investment gain or loss, upon retirement.  Prior to the June 1, 2010 plan amendment, Plan Section 3.02(a)(2) further defined retirement as "Regardless of age, there have been no contributions to the Employee's Individual Account for ten consecutive calendar years . . ."    Plaintiff is 42 years old for whom there have been no contributions to the Employee's Individual Account for ten consecutive calendar years and who now seeks to withdraw funds from the plan.  The plan denied Plaintiff's request to withdraw funds on the grounds that because the provisions of Section 3.02(a)(2) are no longer operative, the earliest age for retirement under the plan defaults to age 55.  Thus, the repeal of Section 3.02(a)(2) is a *de facto* and *de jure* reduction in the early retirement age of this plan, prohibited by the express language of the Employee Retirement Income Act, 29 U.S.C. 1054(g), the so-called Anti-Cut Back requirement of ERISA, and in particular, subsections 1 and 2 thereof, which  state that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 302(d)(2) or 4281" and prohibits "a plan amendment which has the effect of -- (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or (B) eliminating an optional form of benefit,  with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits."

///

///

///

CLASS ACTION COMPLAINT VIOLATION OF ERISA, 29 U.S.C. §1054(g)

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction over this claim pursuant to the Employee Retirement Income Security Act of 1974, as amended, (29 U.S.C. §1001 *et seq*, and hereinafter also referred to as ERISA), including but not limited to denial of and/or termination of future plan benefits for an ERISA plan participant and/or beneficiary, jurisdiction is proper within this court under 29 U.S.C. § 1132(a) which states in relevant part, that: "A civil action may be brought— (1) by a participant or beneficiary— (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

3.      The Cement Masons Annuity Trust Funds for Northern Nevada, Defendant Board of Trustees of The Cement Masons Annuity Trust Funds for Northern Nevada and Plaintiff each have their principle place of business or "reside" in Northern Nevada, within the venue of this court, and the acts giving rise to claim occurred within this judicial district.

**PARTIES**

4.      Cement Masons Annuity Trust Fund for Northern Nevada, an employee pension benefit plan" and/or  "pension plan" established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, as those terms are defined by the Employee Retirement Income Security Act, 29 U.S.C. §1001.   Defendant Cement Masons Annuity Trust Fund for Northern Nevada is sued herein as an entity pursuant to 29 U.S.C. 1132(d)(1).

5.      Defendant Board of Trustees of the Cement Masons Annuity Trust Fund for Northern Nevada is an ERISA plan fiduciary, plan administrator and/or plan sponsor with power to amend the plan, and pursuant to 29 U.S.C. §1132(d)(2), the members of the Board are sued herein in their official capacities only except as to potential injunctive relief such as compelling them to rescind the June 2010 amendment to Plan Section 3.02(a)(2).

6.      Defendant Benefit Plan Administrators, Inc, is ERISA plan fiduciary and named plan administrator as those terms are defined in 29 U.S.C. §1001.

///

CLASS ACTION COMPLAINT VIOLATION OF ERISA, 29 U.S.C. §1054(g)

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

## STATEMENT OF FACTS

7.    As can be seen from the Cement Masons Annuity Trust Fund for Northern Nevada Rules and Regulations (effective January 1, 2002 with amendments until June 1, 2010), a copy of which is attached hereto as Exhibit 1 (hereinafter also referred to as the plan), Cement Masons Annuity Trust Fund for Northern Nevada is an employee pension benefit plan and/or "pension plan" established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, as those terms are defined by the Employee Retirement Income Security Act, 29 U.S.C. § 1001.

8.    As can be seen from Plan Sections 1.11 and 4.11 of Exhibit 1, Defendant Board of Trustees of the Cement Masons Annuity Trust Fund for Northern Nevada, also known as the joint board, board, or trustees, is, and at all times relevant hereto, was a "group of individuals appointed to administer the [Cement Masons Annuity] Trust [Fund] and "is the official Plan Administrator of the Plan."  Specifically, the Board may amend or modify the Plan at any time in accordance with the Trust Agreement, except that no amendment or modification may reduce any benefits which have been approved for payment prior to amendment, so long as funds are available for payment of such benefits, nor may any amendment or modification reduce an Employee's Individual Account other for losses in the Trust Fund.  Therefore, Defendant Board of Trustees of the Cement Masons Annuity Trust Fund for Northern Nevada.

9.    As can be seen from Exhibit 2 hereto, Plaintiff was born on May 23, 1968 and as of July 16, 2010, has an accrued vested benefit in his "Individual Account" with the Cement Masons Annuity Trust Fund of Northern Nevada of $37,404,83.

10.    Prior to June 1, 2010, the provisions of Section 3.02(a)(2) the Plan provided:  "In the event that an Employee Retires, the amount in his Individual Account, if any, shall be paid to the employee, in accordance with Section 3.03 of the Plan. Retirement by an Employee shall be established by either: . . .(2) Regardless of age, there have been no Contributions to the Employee's Individual Account for ten consecutive calendar years, subject to the limitations on Subsection 3.02(c) and Section 4.04. . . "Neither Section 3.02(c) (Death of Beneficiary) nor 4.04 (Lump sum distributions to married annuitants and other miscellaneous rules) applies.

CLASS ACTION COMPLAINT VIOLATION OF ERISA, 29 U.S.C. §1054(g)

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

11.     As can be seen from Exhibit 3, on or about January 23, 2009, Defendant Board of Trustees of the Cement Masons Annuity Trust Fund of Northern Nevada denied Plaintiff's request for distribution of his pension account amount at that time, but stated "Currently this plan does not have a provision for a Hardship Distribution. If you have not further contributions, you will be eligible for your distribution January 2011."

12.     Effective June 1, 2010, Defendant Board of Trustees of the Cement Masons Annuity Trust Fund of Northern Nevada amended the plan to eliminate the provisions of Section 3.02(a)(2) which grant early retirement to anyone who had ten consecutive years or more of no contributions, regardless of age.

13.     The same people who enacted the amendment to eliminate early retirement constitute the only appeal board available to hear Plaintiff's argument that the amendment is unlawful. This is not a question of fact, or facts applicable to plan rules, but a pure question of law.  Therefore, exhaustion of administrative remedies would be futile.

14.     As can be seen from Exhibit 4, Defendants' November 17, 2010 letter to Plaintiff,   the June 1, 2010 amendment increased the early retirement requirement to age 55 whereas before early retirement was available to anyone with 10 years of consecutive non-contributions regardless of age.

## CLASS ACTION ALLEGATIONS

15.     The class consists of all plan participants and/or beneficiaries who were participants in the plan before the effective date of the June 1, 2010 amendment.

16.      Plaintiff is a member of the class he seeks to represent, and will fairly and adequately represent the class.

17.     Upon information and belief, the class consists of well over hundreds of members, so numerous that joinder is impractical.

18.     There is a well-defined community of interest in the questions of law and fact affecting the class as a whole Plaintiff seeks to represent.

19.     Common questions of law and fact apply to all class members as stated herein, and a class action is superior to individual forms of action.

5

**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

20.    The main purpose of this action is to seek equitable relief, i.e. declaring the prior amendment void and unenforceable as to those who were plan participants as of June 1, 2010,and therefore class certification is appropriate as under Federal Rule of Civil Procedure Rule 23(b)(2).

21.    The members of the class are ascertainable from a search of Defendants records.

## FIRST CAUSE OF ACTION:

## VIOLATION OF THE ANTI-CUTBACK PROVISIONS OF ERISA, 29 U.S.C. 1054(g)

22.    Plaintiffs incorporate by reference the allegations contained above as if fully set forth herein.

23.    As stated by the United States Supreme Court in the case of *Central Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 744 (2004):  ERISA's anti-cutback rule is crucial to this object, and (with two exceptions of no concern here 2) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ." 29 U.S.C. §1054(g)(1) [29 USCS § 1054(g)(1)].  After some initial question about whether the provision addressed early retirement benefits, a 1984 amendment made it clear that it does.  Retirement Equity Act of 1984, § 301(a), (2), 98 Stat 1451.  Now § 204(g)  provides that "a plan amendment which has the effect of . . . eliminating or reducing an early retirement benefit . . . with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits." 29 U.S.C. § 1054(g)(2) [29 USCS § 1054(g)(2)]. "

24.    The de facto and de jure impact of the June 1, 2010 amendment was to eliminate the early retirement age from no age other than old enough to have at least 10 years of consecutive non-contributions, to age 55.

25.    By the conduct alleged above, Defendants, and each of them, have violated the provisions of 29 U. S.C. 1054(g).

26.    Therefore, Plaintiff prays, that the Court declare that the plan amendment effective June 1, 2010 purporting to repeal  Plan Section 3.02(a)(2) is null and void ad initio for those who were plan participants and/or beneficiaries of the Cement Masons Annuity Trust Funds for Northern Nevada as of  June 1, 2010, and that the Defendants, and each of them, send

1  notice to all those who are plan participants as of June 1, 2010 that they may retire at any age if

2  they have ten consecutive years of non-contributions.

3      27.    The Plaintiffs further pray that all adverse decisions denying retirement to

4  anyone after June 1, 2010 based solely upon the elimination of Section 3.02(a)(2) by that

5  amendment is reversed, and Defendants, and each of them, shall make full restitution by

6  payment of all monies which were accrued and vested at that time, plus reasonable interest and

7  attorneys fees.

8                         **SECOND CAUSE OF ACTION:**

9  **BREACH OF FIDICUARY AND CO-FIDUCIARY DUTY BY BACK-DATING**

10                  **TERMINATION OF PLAN PARTICIPATION**

11      28.    Plaintiffs incorporate by reference the allegations contained above as if fully set

12  forth herein.

13      29.    As plan fiduciaries, Defendants and each of them owe Plaintiffs a duty of care,

14  loyalty, and prudence and to follow all plan documents to the extent they are consistent with

15  subchapter I and II of ERISA.

16      30.    29 U.S.C. § 1104(a) states, in relevant part, that a fiduciary, including

17  Defendants herein, shall discharge his duties with respect to a plan solely in the interest of the

18  participants and beneficiaries and -- (A) for the exclusive purpose of: (i) providing benefits to

19  participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the

20  plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing,

21  that a prudent man acting in a like capacity and familiar with such matters would use in the

22  conduct of an enterprise of a like character and with like aims; (C) by diversifying the

23  investments of the plan so as to minimize the risk of large losses, unless under the

24  circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and

25  instruments governing the plan insofar as such documents and instruments are consistent with

26  the provisions of this subchapter and subchapter III of this chapter.

27      31.    As a co-fiduciary pursuant to 29 U.S.C. § 1105, Defendants had the further

28  obligation to prevent a co-fiduciary from breaching the obligations to the plan participants and

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

7

**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

beneficiaries, and certainly not to continue to mask, hide, and cover up the breach of fiduciary duties by a co-fiduciary.  As a co-fiduciary charged with plan administration, Defendants had an affirmative duty to investigate the truth of any contradictory statements of a co-fiduciary concerning plan participation, especially when Defendants' own records indicated that such statements were objectively false.

32.   Specifically, Defendants knew or should have known, that the plan amendment eliminating Section 3.02(a)(2) was void and in violation of law, 29 U.S.C. §1054(g).

33.   Defendants knew or should have known that the decision to retroactively terminate the provisions for early retirement contained in Plan Section 3.02(a)(2)  was not made with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

34.   By the acts complained of herein, Plaintiff has been injured by not being able to use his retirement monies to supplement his costs of living when his normal pay from non-covered service with the State of Nevada is being reduced by across the board budget cuts.

35.   Therefore, Plaintiffs demand recovery of all benefits due to them under the terms of this plan.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them according to proof, as follows:

1)   All benefits due Plaintiffs under the terms of this plan from the period of the fictitious, retroactive plan termination on October 1, 2006 until the date that the plan reverses that fictitious participant termination, and continuing thereafter according to the terms of the plan on the same basis and at the same costs as applicable to all other plan participants and/or beneficiaries similarly situated, including the cost of obtaining other insurance in mitigation of the plan's denial of coverage during this period;

CLASS ACTION COMPLAINT VIOLATION OF ERISA, 29 U.S.C. §1054(g)

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

2)  All benefits due Plaintiff class members under the terms o their plans from the period of any alleged termination of plan participation prior to the affording of notice and at least enough time to exhaust administrative remedies under the plan, and continuing thereafter according to the terms of the plan on the same basis and at the same costs as applicable to all other plan participants and/or beneficiaries similarly situated, including the cost of obtaining other insurance in mitigation of the plan's denial of coverage during this period;

3)  An injunction enjoining Defendant to enforce all the rights under the terms of the plan of any and all participants and/or beneficiaries who are being terminated from plan coverage, including the right to continued coverage until the exhaustion of all administrative remedies under the plan documents, the right to due process and notice of any adverse action prior to the time to appeal according to the plan documents, and the right to obtain alternative medical coverage with the same insurance company as provided by the plan document and/or under law;

4)  An order  clarifying that Plaintiff has the right to future benefits under the terms of the plan for the rest of their lives under the same conditions and at the same costs as all other participants;

5)  An order clarifying that all plan participants and/or beneficiaries may not be terminated from any plan of which the Defendant is a fiduciary or administrator, without notice and without sufficient time to exercise the rights of appeal required of them before they can seek judicial relief, and if they exercise the appeal rights specified in the plan documents, then the continuation of coverage until such time as those administrative remedies are exhausted;

///
///
///

9

CLASS ACTION COMPLAINT VIOLATION OF ERISA, 29 U.S.C. §1054(g)

6) Attorneys fees and costs as provided by statute; and

7) Such other relief as the Court deems just and proper.

DATED:  April 27, 2011                              Respectfully submitted:

THIERMAN LAW FIRM

By: /s/ Mark R. Thierman
    MARK R. THIERMAN
    Attorney for Plaintiffs

THIERMAN LAW FIRM, PC
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email laborlawyer@pacbell.net www.laborlawyer.net

10

**EXHIBIT 1**

# CEMENT MASONS ANNUITY TRUST FUND
## FOR NORTHERN NEVADA
### RULES AND REGULATIONS
(Restated Effective January 1, 2002)

By resolution, the Board of Trustees of the Cement Masons Annuity Trust Fund for Northern Nevada adopted the following Retirement Trust to be effective June 1, 1984. The Plan was adopted pursuant to the authority of the Board of Trustees granted under the Agreement and Declaration of Trust entered into as of May 3, 1984. It was subsequently revised and restated effective January 1, 1995. This document shall become effective as of January 1, 2002, and constitutes an amendment, restatement and continuation of the Plan. This restated Plan contains provisions that are intended to permit continued compliance with current qualification requirements of the Internal Revenue Code.

This Plan was established to help Participants accumulate funds for retirement and to provide funds for their beneficiaries in the event of a Participant's death. The Plan is maintained for the exclusive benefit of the Participants and their beneficiaries.

This revised Annuity Fund is applicable only to benefits that commence on and after January 1, 1995. Benefits that commenced prior to January 1, 2002, are determined in accordance with the provisions of the prior Plan.

# SECTION 1.  DEFINITIONS

Section 1.01.  "Accumulated Share" as used herein shall mean the amount payable from an Individual Account as defined and described in Section 2.01

Section 1.02.  "Annuitant" as used herein shall mean an Employee who retires and who receives a benefit from the Fund.

Section 1.03.  "Annuity Starting Date" for a Participant means the first day of the first calendar month starting after or coincident with the later of:

(a)     the month following the month in which the Participant has fulfilled all of the conditions for benefits, including the filing of an application for benefits, or

(b)     30 days after the Plan advised the Participant of the available benefit payment options.

Notwithstanding subsection (b) above, the Annuity Starting Date may occur and benefits may begin before the end of the 30-day period provided:

(c)     the Participant and Spouse, if any, consent in writing to the commencement of payments before the end of the 30-day period and distribution of the Individual Account begins more than seven days after written explanation was provided to the Participant and Spouse; and

(d)     the benefit is being paid out automatically as a lump sum under Section 3.03

1

The Annuity Starting Date will not be later than the Required Beginning Date as defined in Section 1.17.

The Annuity Starting Date for a beneficiary or alternate payee under a Qualified Domestic Relations Order (within the meaning of Section 206 (d)(3) of ERISA and Section 414 (p) of the Internal Revenue Code) will be determined as stated in subsections (a) and (b) above, except that any references to a qualified joint and survivor annuity and surviving Spouse consent do not apply.

Section 1.04.  "Beneficiary" means a participant or person designated by a participant, or designated by the terms of the Trust Agreement, who is or may become entitled to a benefit there under.

Section 1.05.  "Contributions" as used herein shall mean the payments required to be made to the Trust Fund by an Employer.  The term "Contribution" shall also include contributions owed for periods of Qualified Military Service in the armed forces of the United States consistent with and to the extent required by the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended (USERRA), and Section 414 (u) of the Internal Revenue Code, as amended.

An Employee's Individual Account shall be credited with hours worked equal to the average amount of hours worked earned by the Employee during the 12-month period of employment immediately prior to the period of Qualified Military Service (or, if shorter, the period of employment immediately preceding such period).  The hourly rate of contributions shall be equal to the average rate of contributions for all Employees during the Fiscal Year in which the Qualified Military Service was performed.

Contributions owed to the Individual Account of any Employee for a period of military service shall come from gross investment yield and forfeitures, if any, before coming from any Employer.

Section 1.06.  "Employee" means: (1) any employee covered by a Collective Bargaining Agreement between the Union and Employer, and on whose behalf an Employer is obligated to make contributions to the Fund; (2) employees of an Employer who, pursuant to resolution of the Board of Trustees, are included in the Annuity Plan and on whose behalf such Employer makes contributions to the Fund on the same basis as are made by Employer parties to collective bargaining agreements; and (3) employees of the Union on whose behalf contributions are made to the Trust with the approval of the Trustees, provided that the inclusion of any "employee" is not in violation of any existing law or governmental regulation and does not affect the tax-exempt status of the Trust.

Solely for the purposes of testing for compliance with the nondiscrimination regulations under §401 (a)(4) of the Internal Revenue Code, all leased employees as defined in Code §414 (n) or §414 (o) who have performed services for a Contributing Employer on a substantially full time basis for a period of at least one year shall be treated as employed by a Contributing Employer except to the extent such employees are excluded in accordance with Code §414 (n)(5).

The term " Employee" does not include any self-employed person, whether a sole proprietor, partner or otherwise.

Section 1.07. "Employer" or "Contributing Employer" means any employer who is required by a Collective Bargaining Agreement to make contributions to the Trust. The term "Employer" shall also include the Union, or any other employer who, by written agreement to participate, may be authorized by the Trustees to, and does, make one or more payments into the Annuity Fund on behalf of its employees.

For purposes of identifying highly compensated employees and applying the rules of participation, vesting and statutory limits on benefits under the Plan but not for determining Covered Employment, the term "Employer" includes all corporations, trades or businesses under common control with the Employer within the meaning of Internal Revenue Code 414(b) and (c), all members of an affiliated service group with the Employer within the meaning of Internal Revenue Code Section 414(m) and all other business aggregated with the Employer under Internal Revenue Code 414(o).

Section 1.08. "Fiscal Year" or "Plan Year" as used herein shall mean any period from June 1 through the following May 31.

Section 1.09. "Highly Compensated Employee" means each highly compensated active employee and highly compensated former employee of an Employer. Whether an individual is a highly compensated employee is determined separately with respect to each Employer, based solely on that individual's compensation from or status with respect to that Employer.

A Highly Compensated Active Employee is an employee of the Employer who performs service for the Employer during the determination year and who:

(a)    During the look-back year received compensation from the Employer in excess of $80,000 (as adjusted under Section 414 (q) of the Internal Revenue Code) and was one of the top 20 percent (20%) of the employees of the Employer during the look-back year when ranked on the basis of the compensation during that year.

(b)    Is a five percent (5%) owner at any time during the look-back year or the determination year.

(c)    The "determination year" is the Plan Year for which the test is being applied, and the "look-back year" is the 12-month period immediately preceding that Plan Year.

A "highly compensated former employee" is an employee who was a Highly Compensated Employee when he or she separated from service or was a Highly Compensated Employee at any time after attaining age 55. The determination of who is Highly Compensated Employee will be made in accordance with Section 414 (q) of the Internal Revenue Code and the regulations thereunder.

Section 1.10. "Individual Account" as used herein shall bean the account established for each Employee, pursuant to Section 2 of the Plan.

Section 1.11. "Joint Board of Trustees" means the group of individuals appointed to administer the Trust. As a group they are referred to as the "Joint Board", "Board", "Trustees" or "Board of Trustees." The Board of Trustees is the official Plan Administrator of the Plan.

Section 1.12. "Market Value" as used herein shall mean the value of the assets that takes into account fair market value.

Section 1.13. "Non-Bargained Employee" means a Employee whose participation is not covered by a Collective Bargaining Agreement. The continued participation in the Plan of Employees who are not covered by a Collective Bargaining Agreement is subject to compliance with the Top-Heavy requirements of Internal Revenue Code Section 416 and the following supplemental conditions and limitations:

(a)     The non-bargaining unit Employees of each Employer on whose behalf the Employer contributes to the Fund must comprise a group that meets the Internal Revenue Code's minimum coverage and participation requirements for qualified pension plans and not favor Highly Compensated Employees, as in effect from time to time (or alternatively, each Employer whose non-bargained Employees participate in the Plan must contribute on behalf of all its non-bargained Employees who meet the Plan's eligibility requirements).

(b)     Each Employer which has or had any non-bargained Employees participation in the Plan much cooperate with any rules and procedures adopted by the Trustees calling for Employers to provide compliance reports and certifications, and with such random compliance audits as the Trustees may deem necessary to ensure compliance with the minimum participation and coverage requirements.

(c)     Effective August 1, 1988, no non-bargained Highly Compensated Employee (as defined in Section 414(q) of the Internal Revenue Code and the regulations thereunder) will accrue a benefit under the Plan for a Plan Year unless his Employer contributes on behalf of enough non-bargaining unit Employees to meet the requirements of Section 401(a)(4), 401(a)(26) and 401(b) of the Internal Revenue Code and the regulations thereunder for each Plan Year and the Employer provides the Plan with a written certification to that effect (or alternatively, unless his or her Employer contributed or contributes on behalf of all non-bargained Employees who meet the Plan's eligibility requirements).

Section 1.14. "Participant" means any Employee or former Employee who is or who may become eligible to receive a benefit of any type from the Fund or whose Beneficiaries may be or become eligible to receive any such benefit.

Section 1.15. "Plan" as used herein shall mean the rules and regulations set forth herein and any amendment hereto.

Section 1.16. "Qualified Military Service" means an Employee's qualified military or other uniformed service period under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), as amended.

Notwithstanding any provision to the contrary, a Participant's benefits shall include contributions (but not investment income or forfeitures) owed for periods of Qualified Military Service in the uniformed services of the United States consistent with and to the extent required by USERRA, as amended, and Section 414 (u) of the Internal Revenue Code, as amended. Qualified Military

Service will be counted for purposes of crediting an Employee's Individual Account with contributions provided the following conditions are satisfied:

(a)     An Employee must have re-employment rights under USERRA in order for his period of Qualified Military Service to be recognized.

(b)     The Employee must have performed at least 1,000 Hours of Service within the two consecutive Fiscal Year period which includes the Fiscal Year in which he enters Qualified Military Service.

(c)     After discharge from Qualified Military Service, the Participant must return to work within the time required by USERRA.

(d)     No more than five years of Qualified Military Service may be recognized for any purpose, except as required by law.

Section 1.17.  "Required Beginning Date" means the April 1st following the calendar year in which the Participant attains age 70½, or if later the date the Participant retires or terminates his or her employment.  Benefit payments to 5% owners must commence no later than April 1 following the year of attainment of age 70½ regardless of whether he or she has terminated employment or retired.

Section 1.18.  "Retirees" or "Retired" or "Retirement" shall mean the Annuitant must refrain from engaging in employment for wages or profit in any work of the type performed by Employees anywhere in the geographical area covered by this Annuity Trust Fund.

Section 1.19.  "Spouse" means a person to whom a Participant or Annuitant is legally married.

Section 1.20.  "Trust Agreement" as used herein shall mean the Agreement and Declaration of Trust entered into as of May 3, 1984 establishing the Cement Masons Annuity Trust Fund for Northern Nevada or as the same may hereafter be amended.  .

Section 1.21.  "Trust Fund" means the Trust Fund established by this Agreement and shall include all investments, money and other assets held by the Trustees under this Agreement.  The term "Trust Fund" shall have the same meaning as shall the term "Annuity Fund".

Section 1.22.  "Union" means the Operative Plasterers and Cement Masons of Northern Nevada No. 241.

Section 1.23.  "Valuation Date" as used herein means May 31.

## SECTION 2. INDIVIDUAL ACCOUNTS

Section 2.01. Establishment of Accounts. As of each Valuation Date following the adoption of this Plan, an Individual Account shall be established for each Employee unless an Individual Account has already been so established.

Section 2.02. Valuation of Accounts. The amount in each Individual Account, as of a given Valuation Date, shall be determined as follows:

(a)   Ascertain the amount of contributions made or required to be made with respect to the work of the Employee to this Individual Account for the Plan Year.

(b)   Determine the total Net Investment Income by taking the total investment income for the given year (including all realized and unrealized capital gains and losses) less investment expenses paid during the year.

(c)   Determine the total of all administrative expenses paid by the Fund during the year.

(d)   For the second and subsequent Valuation Dates, determine the amount in the Individual Account as of the last preceding Valuation Date, less the amount of any payments made during the year.

(e)   For the first Valuation Date, divide the total Net Investment Income (Item (b)) by the total of all contributions required to be made during the year. For other Valuation Dates, divide the total Net Investment Income by the total of Item (d) for all the accounts that were in existence on both the preceding and the new Valuation Dates. The result is the Investment Yield Rate for the year.

Exception: For the Valuation Date of May 31, 1990 only, for the purposes of this Subsection, Item (d) is increased by one-half of the amount transferred from the Cement Masons Pension Trust Fund for Northern Nevada and one-half of the amount of contributions actually made with respect to work of the Employees for the 1989-90 Plan Year.

(f)   For the first Valuation Date, divide Item (c) by the number of Individual Accounts to which contributions were required to be made during the year. For other Valuation Dates, Item (c) is divided by the number of Individual Accounts that were in existence on both the preceding and the new Valuation Dates. The result is the Expense Charge per Individual Account for the year.

Exception: For the Valuation Date of May 31, 1989 and May 31, 1990, the Expense Charge per Individual Account will be calculated by dividing Item (c) by the number of accounts in existence on the Valuation Date.

(g)   For the first Valuation Date, multiply Item (a) by the Investment Yield Rate; then subtract the Expense Charge per Individual Account; and finally add Item (a). For subsequent valuations through May 31, 1992, multiply Item (d) by the Investment Yield Rate; then

subtract the Expense Charge per Individual Account; and finally add Item (a) and Item (d). This result is the amount in the Individual Account as of a given Valuation Date.

(h)     For the May 31, 1993 and subsequent Valuations, the Board shall determine and fix the amount in Individual Accounts as follows:

(1)     The Investment Income Factor shall be determined as follows:

a.     Determine the total investment income for the Plan Year, net all operating expenses (including non-investment-related expenses) and minus the amount of Contributions determined by the Trustees to be delinquent and uncollectible and the amount of Contributions (but not earnings or forfeitures) owed during any period of Qualified Military Service.

b.     Determine the sum of the Individual Account balance on the preceding Valuation Date for those accounts that were in existence on the preceding Valuation Date and remain in existence on the current Valuation Date.

c.     Divide the total of all investment income (as defined in (1)a. above) by the amount in (1)b. above.  The result is the Investment Income Factor.

(2)     The investment income to be allocated to the Employee's Individual Account for the year is determined by multiplying the Investment Income Factor (1)c. above by the Individual Account balance on the last preceding Valuation Date.

(3)     The amount of the Individual Account as of a Valuation Date is determined as follows:

a.     Take the Individual Account amount on the preceding Valuation Date;

b.     Add in the Contributions made or required to be made to the Employee's Individual Account for the year;

c.     Add in the investment income allocated to the Employee's Individual Account for the year under (2) above.

(4)     Valuations performed prior to May 3, 1993 shall be determined in accordance with the Plan provisions in effect on April 30, 1993.

Section 2.03.  One-Time Rollover from Related Qualified Defined Contribution Plans.

(a)     With the consent of the Trustees, amounts may be transferred once per Participant from Related Qualified Defined Contribution Plans provided that the trust from which such funds are transferred permits the transfer to be made, and the transfer will not, in the opinion of the Trustees, jeopardize the tax exempt status of the Plan or Trust.  The amounts transferred shall be allocated to the Individual Account of the Participant on whose behalf the transfer was made.  A Participant shall be fully vested and have a nonforfeitable right to the amounts transferred on his behalf from other qualified plans pursuant to this Section.

7

(b)   The Plan shall only accept amounts transferred from other Related Qualified Defined Contribution Plans on behalf of a Participant when such amounts are:

   (1)   amounts transferred to this Plan directly from another qualified plan; or

   (2)   lump-sum distributions received from a Participant from another qualified plan which are eligible for tax-free rollover to a qualified plan and which are transferred by the Participant to this Plan within sixty days following his receipt thereof.

(c)   Prior to accepting any transfers from a Related Qualified Defined Contribution Plan, the Trustees may require the Participant to establish that amounts to be transferred meet the requirements of this Section and Section 402 of the Internal Revenue Code.

(d)   Amounts transferred from a Related Qualified Defined Contribution Plan shall be used to establish an Individual Account that will be maintained separately for purposes of regular valuation of Participants' accounts. Such Individual Account shall be held pursuant to the terms of the Plan, and may not be withdrawn by or paid to a Participant, in whole or in part, except as provided in Article 3 of the Plan.

(e)   For purposes of this Section, the term "Related Qualified Defined Contribution Plan' shall mean the tax qualified defined contribution plan under Internal Revenue Code Section 401(a) covering collectively bargained employees in the building and construction industry in the geographical jurisdiction of this Plan.

Section 2.04.   Termination of Account.  An Individual Account shall be considered terminated in the month in which payment of the Accumulated Share is made, or commenced if on a monthly basis.

Section 2.05.   Limitation of Accounts.  In no event and at no time shall the total amounts in all Individual Accounts at any Valuation Date, plus amounts previously established for expenses and reserves at that time, exceed the total net assets of the Fund. Should such an event occur, then all existing Individual Accounts shall automatically be proportionately reduced so that the total of all Individual Accounts plus amounts established for expenses and reserves is not more than the Fund's total net assets.

Section 2.06.   Restrictions on Interest.  The fact that Individual Accounts are established and valued as of each Valuation Date shall not give any Participant or others any right, title or interest in the Fund, or its assets, or in the Individual Account, upon the terms and conditions herein provided.

Section 2.07.   Interim Valuations.  The Board may, in its sole and absolute discretion, fix interim Valuation Dates on a quarterly or semi-annual basis which may then be used to determine the amount in Individual Accounts terminated with respect to which request for payment has been made since any previous Valuation Date.

Section 2.08.   Annual Statements.  As soon as practicable before the close of each Plan Year, each Participant who has an Individual Account shall receive a statement reflecting the balance of his Individual Account as of the most recent Valuation Date.

8

Section 2.09.  Vesting.  Participants are 100% vested in their Individual Account balances, subject to sections 2.02 and 2.05 of the Plan.

Section 2.10.  Compensation.  To the extent applicable for this Plan as required by the Internal Revenue Code and applicable regulations, compensation is defined as the total of all amounts paid to an employee by an employer for personal services as reported on the Employee's federal income tax withholding statement, form W-2, and excluding any benefits paid under this Plan. Compensation includes each employee's hourly straight time and overtime earnings.

For years beginning after December 31, 1988, the annual compensation of each participant taken into account under the Plan for any year shall not exceed $200,000 (as adjusted).  Effective as of January 1, 1994, such compensation shall not exceed $150,000 (as adjusted).

Notwithstanding the foregoing, for Fiscal Years beginning after December 31, 1997, Compensation shall also include any elective deferral under Internal Revenue Code §402(g)(3), and any amount which is contributed or deferred by the Employer at the election of the Employee and which, by reason of Code § 125 or 457 is not includible in the gross income of the Employee.

## SECTION 3. BENEFITS AND ELIGIBILITY.

Section 3.01.  Amount to be Paid.

(a)    Upon the happening of any event calling for the payment of any annuity, lump-sum amount or other benefit from this Fund, the amount to be paid, subject to the specific provisions of the following Sections, shall be Employee's "Accumulated Share" determined as of the date of the event, as follows:

    (1)    Determine the Employee's Individual Account as of the last preceding annual Valuation Date.

    (2)    Add to (1) all Contributions received or required to be made with respect to the work of the Employee.  The resultant total shall be the Employee's "Accumulated Share".

(b)    For the purpose of determining the Accumulated Share pursuant to paragraph (a) of this Section, the happening of the event calling for a payment shall be deemed to be the month in which the application for which payment is finally made is received by the Board.

(c)    Notwithstanding anything herein to the contrary, the distribution of an Employee's Individual Account shall commence to him no later than his Required Beginning Date.

Section 3.02.  Payment of Accumulated Share.

(a)    In the event that an Employee Retires, the amount in his Individual Account, if any, shall be paid to the Employee, in accordance with Section 3.03 of the Plan.  Retirement by an Employee shall be established by either:

    (1)    Attainment of age 62 and application for Retirement to the Board of Trustees, or

    (2)    Regardless of age, there have been no Contributions to the Employee's Individual Account for ten consecutive calendar years, subject to the limitations of Subsection 3.02 (c) and Section 4.04.; or

    (3)    Entitlement to a Social Security Disability Benefit.

(b)    The Board may require such medical examinations, documentary proof or other evidence, as it deems necessary or desirable to implement this Section.

(c)    In the event that an Employee dies before he becomes an Annuitant, his Accumulated Share shall be paid to his Beneficiary or as otherwise provided in Section 4.05 as an annuity or a lump sum, as elected by the Beneficiary, on the same terms as are set forth in Section 3.03, subject to the provisions of the Retirement Act of 1984.

Section 3.03.  Form of Distribution of Accumulated Share.

(a)  An Employee who becomes entitled to receive his Accumulated Share may, at least 90 days prior to the time when a distribution shall be made, request the Board to pay his Accumulated Share in any of the following forms:

(1)  A nontransferable annuity contract purchased from a licensed insurance company providing annuity payments payable at least annually in substantially equal installments, over a period of time not longer than the life of the Employee, or over the lives of the Employee and a designated Beneficiary (or over a period not extending beyond the life expectancy of the Employee or the life expectancy of the Employee and a designated Beneficiary); or

(2)  A lump sum payment; or

(3)  To the extent supported by the Accumulated Share, substantially equal annual payments for 60 months or 120 months as the Employee may elect.  During the elected payment period participation in the Plan will continue for the purposes of incurring a proportionate share of the net investment income and administrative expenses of the Fund on each Valuation Date subsequent to the Annuity Starting Date.  Payment for the elected payment period shall continue in equal amounts only to the degree that the Accumulated Share as determined can support payment on the most recent Valuation Date.  At the end of the elected payment period, any remaining balance – based on the Accumulated Share as determined on the most recent Valuation Date minus the amount of subsequent monthly payments – shall be paid in a lump sum amount.  If the Employee dies prior to the end of the elected payment period, the remaining payments will be paid to the spouse or designated Beneficiary.

(b)  A Qualified Joint and Survivor Annuity:  A Qualified Joint and Survivor Annuity shall be an annuity payable for the life of the Employee with a survivor annuity continuing for the life of the legal spouse which shall be 50% of the amount of the annuity payable during the joint lives of the Employee and his Spouse.  The Qualified Joint and Survivor Annuity will be at least as valuable as any other optional form of benefit payable under the Plan.

Notwithstanding Subsection (a) above to the contrary, if an Employee is married on the Annuity Starting Date the Employee shall automatically receive his Accumulated Share in the form of a Qualified Joint and 50% Survivor Annuity, unless, the Employee has filed with the Board, in writing, a timely rejection of that form of annuity subject to all of the conditions of this Subsection 3.03.(b).

No election to waive a Qualified Joint and Survivor Annuity shall be effective unless:  (1) the Spouse of the Employee has consented in writing to such election (2) the consent states that the specific beneficiary and optional method of payment may not be changed without the consent of the Spouse, (3) the consent acknowledges the effect of the election, and (4) the consent is witnessed by a Fund Representative or Notary Public.  No consent shall be required if it has been established to the satisfaction of the Board that there is no Spouse, or the Spouse cannot be located, or such consent cannot be obtained for extenuating reasons

11

satisfactory to the Board. An Employee and his Spouse may elect to waive the Qualified Joint and Survivor form of annuity or revoke any such election at any time, any number of times, but not more than 90 days or less than 30 days before the Annuity Starting Date. An Employee and his Spouse shall in any event have the right to exercise this choice up to 90 days after they have been advised by the Board of the terms and conditions of the Qualified Joint and Survivor Annuity.

No spousal consent as described above shall be required if the Employee elects to have his Accumulated Share payable as a Qualified Joint and Survivor Annuity.

Section 3.04. Eligible Rollover Distributions. This Section applies to distributions made from the Fund on or after January 1, 1993. Notwithstanding any provisions of the Plan to the contrary that would otherwise limit a distributee's election this Section, a distributee may elect, at the time and in the manner prescribed by the Plan administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover (all terms as defined below).

(a)   An "eligible rollover distribution" is any distribution of all or any portion of the balance in a distributee's Individual Account, except that an eligible rollover distribution does not include:

   (1)   any distribution that is one of a series of substantially equal periodic payments (not less frequent than annually) made for the life (or life expectancy) of the distributee, or the joint lives (or joint expectancies) of the distributee and the distributee's designated Beneficiary, or for a specified period of ten years or more;

   (2)   any distribution to the extent such distribution is required under Section 401(a)(9) of the Internal Revenue Code; or

   (3)   the portion of any distribution that is not includible in gross income.

(b)   An "eligible retirement plan" is:

   (1)   individual retirement account described in Section 408(a) of the Internal Revenue Code; or

   (2)   an individual retirement annuity described in Section 408(b) of the Internal Revenue Code; or

   (3)   a qualified trust described in Section 403(a) of the Internal Revenue Code; or

   (4)   a qualified trust described in Section 401(a) of the Internal Revenue Code

that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or an individual retirement annuity.

12

(c)     A "distributee" includes an Employee or former Employee. In addition, the Employee's or former Employee's surviving spouse and Employee's or former Employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Internal Revenue Code, are distributes with regard to the interest of the spouse or former spouse.

(d)     A "direct rollover" is a payment by the Plan to the eligible retirement plan specified by the distributee.

Section 3.05. <u>Lump Sum Payment.</u> If an Accumulated Share is payable, which amounts to $5,000 or less, then such Accumulated Share shall be paid only on the lump sum basis.

Section 3.06. <u>Failure to Apply for Accumulated Share.</u>

(a)     If a Participant's participation in this Fund is terminated as described in Section 3.02, and an application for payment of his Accumulates Share is not received, said Accumulated Share shall continue to be a part of the Fund and shall share in the allocation of the expenses and of the next appreciation of depreciation of the Fund or net investment yield of loss pursuant to the provisions of Section 2.02.

(b)     If a Participant whose participation in the Fund is terminated makes the required application but on the date that payment of his Accumulated Share is due to be made the Board of Trustees is unable to locate him, the Board shall attempt to locate such Participant but if unable to do so, the Participant's Accumulated Share shall continue to be part of the Fund in the manner outlined in Subsection 3.06(a). If the Board is unable to locate such Participant within five (5) years of the date on which the payment of his Accumulated Share was to have been made, then no benefit is payable and such amount shall be used to defray the administrative costs of the Fund in accordance with Section 2.02, provided that, if the Employee hereafter files an application and is entitled to payment of the Accumulated Share, such forfeiture shall be rescinded and payment shall be made.

13

## SECTION 4. GENERAL PROVISIONS

Section 4.01. Application for Benefits: Initial Date. Application for all benefits must be made in writing in a form and manner prescribed by the Board, at least 90 days prior to the date payment of the Employee's Accumulated Share is to be made in accordance with Section 3.03.

Section 4.02. Proof to be Furnished: Penalties for Fraud. Every Employee, Participant, Annuitant or Beneficiary shall furnish, at the request of the Board, any information or proof reasonably required for the administration of the Plan or for the determination of any matter that the Board may legitimately have before them. Failure to furnish such information or proof promptly and in good faith shall be sufficient reason for the denial of benefits to such Employee, Participant or Beneficiary or the suspension or discontinuance of benefits to such Annuitant. The falsity of any statement material to an application or the furnishing of fraudulent information or proof shall be sufficient reason for denial, suspension or discontinuance of benefits under this Plan, and in any such case the Board shall have the right to recover any benefit payments made in reliance thereon.

Section 4.03. Notice of Claim Denial and Appeal Procedures.

(a)   Notice of Denial of Claim for Benefits.  If a claim is wholly or partially denied, claimant shall be given notice of such denial within 90 days after the claim is received. An extension of time not exceeding 90 days may be required by special circumstances. Notice of such an extension, indicating what special circumstances exist and the date by which a final decision is expected to be rendered, shall be furnished the claimant prior to the expiration of the initial 90 day period, except in unusual circumstances.

The notice of denial shall set forth in a manner calculated to be understood by the claimant: (a) specific reasons for the denial; (b) specific reference to the Plan provision on which the denial is based; (c) a description of any additional material or information necessary which the claimant may need to perfect the claim, together with an explanation of why such material or information is necessary; and (d) an explanation of the Plan's claims review procedure.

(b)   Appeals Procedure.  If a claimant wishes to appeal the denial of a claim wholly or partially, the claimant shall follow the following procedures:

(1)   Step 1.  Request for Review.  The claimant shall make a written request for review to the Board within 60 days from the date the claimant received notice of denial. The request must describe the claimant's version of the facts and reasons why the denial was not proper.

(2)   Step 2.  Decision.  If the Board on claimant's request for review holds no hearing, the Board shall render a decision within 60 days after the Board receives claimant's request for review.

14

If a hearing is held by the Board on claimant's request for review, the claimant be advised of the extension time for processing in writing and the Board shall render a decision within 120 days after the Board receives claimant's request for review.

A decision on review must be in writing and must include specific reasons for the decision. A decision shall be written so that the claimant can understand it and shall contain specific references to the Plan provisions on which the denial is based.

(c)     Hearing: Final and Binding Decision.

All hearings shall be held at the discretion of the Board of Trustees at a time and place designated by them and shall be heard either before the full Board of Trustees or a designated portion of the Board of Trustees. The Board may prescribe reasonable rules for orderly conduct of the hearing to permit a full and fair review of all issues raised for review. The claimant and the Board may review pertinent documents, may have legal counsel present at such hearing and may make arguments.

The denial of an application or claim after the right to review has been waived or the decision of the Trustees on petition for review has been issued, shall be final and binding upon all parties, including the application, claimant or petitioner. This section shall apply to and include any and every claim to benefits from the Trust, and any claim or right asserted under the Fund or against the Trust, regardless of the basis asserted for the claim, regardless of when the act or omission upon which the claim is based occurred and regardless of whether or not the claimant is a "Participant" in, or a "Beneficiary" of the Plan within the meaning of those terms as defined in ERISA.

Section 4.04. Benefit Payments Generally. A Participant who is eligible to receive to receive benefits under this Plan and makes application in accordance with the rules of this Plan shall be entitled upon Retirement to receive the benefits provided herein. Benefit payments shall be payable commencing on the Annuity Starting Date.

A Participant, may however, elect in writing filed with the Board to receive benefits first payable for a later month, provided that no such election may postpone the commencement of benefit to a date later than the Required Beginning Date.

If a Participant's Beneficiary is not his surviving spouse, the payment of any benefits under the Plan that become payable on account of the Participant's death shall begin no later than one year form the date of such death or, if later, as soon as practicable after the Board learns of the Participant's death. A lump-sum distribution to such non-spousal Beneficiary shall be made no later than five years from the date of the Employee's death. Such distributions shall be made in accordance with applicable IRS regulations. If the Beneficiary is the Participant's surviving spouse, payment of any Plan benefits shall commence not later than the date of the Participant's Required Beginning Date.

If the Beneficiary is the Participant's surviving spouse, payments of any Plan benefits shall commence within a reasonable period of time after the Board learns of the death and spouse makes application, but in no event later than the date of the Participant's Required Beginning Date.

Section 4.05. Designation of Beneficiary. A Participant may designate a Beneficiary on a form provided by or acceptable to the Board and delivered to the Board before death. A Participant may change his Beneficiary (without consent of the Beneficiary) in the same manner. If no Beneficiary has been designated, or no designated Beneficiary has survived the Participant, distribution of the Participant's Accumulated Share shall be made to the next of kin in the following order of preference:

(a)     The surviving spouse.

(b)     The surviving children in equal shares.

(c)     The surviving parents in equal shares.

(d)     The surviving brothers and sisters in equal shares.

If the Participant leaves no named Beneficiary, spouse, child, parent or brother or sister surviving, then his benefit is to be distributed to his estate.

Notwithstanding the foregoing, the designation by a married Participant of a Beneficiary who is not the Participant's legal spouse shall be subject to the requirement of spousal consent as set forth in Section 205(c) of ERISA.

Any designation of a spouse as Beneficiary of death or other benefits is revoked on entry of a final judgment of dissolution of marriage and is no longer valid.

Section 4.06. Mental Incompetence. In the event it is determined that an Employee, Participant, Annuitant or Beneficiary is deemed mentally incompetent by a court, any benefit due such Employee, Participant, Annuitant or Beneficiary shall be paid either to his legal guardian, or if there is none, the Board may make payments to his spouse or other satisfactory representative.

Section 4.07. Non-Assignment of Benefits. No Participant, Annuitant or Beneficiary shall have the right to assign, alienate, transfer, encumber, pledge, mortgage, hypothecate, anticipate, or impair in any manner his legal or beneficial interest, or any interest in assets of the Annuity Fund. Neither the Annuity Fund nor any of the assets thereof, shall be liable for the debts of any Participant, Annuitant or Beneficiary entitled to any benefits from this Fund, nor be subject to attachment or execution or process in any court of action or proceeding.

Notwithstanding the foregoing, benefits shall be paid in accordance with the applicable requirements of any Qualified Domestic Relation Order as defined by Section 206(d)(3) of ERISA.

A Qualified Domestic Relations Order ("QDRO") is an order that creates or recognizes the existence of an alternative payee's right to an alternative payee the right to receive all or a portion of the benefits payable with respect to the Plan and clearly meets the requirements of such an Order as set forth in the Retirement Equity Act of 1984. The Board of Trustees shall adopt procedures relating to such Order.

The Order must also clearly specify:

(a)     the name, last known mailing address (if any), dates of birth, marriage and separation, and Social Security number of the Participant and each Alternate Payee (such as a former Spouse of a child) covered by the Order;

(b)     the amount of percentage of the Participant's benefits to be paid under the Plan to each such Alternate Payee, or the manner in which such amount or percentage is to be determined;

(c)     the number of payments or payment period to which such Order applies; and

(d)     that the Order is applicable with respect to this Plan, among other required information.

Section 4.08.  Powers of the Board.

(a)     The Board of Trustees has the power to interpret the provisions of this Plan and to determine all questions arising under the Plan and its interpretation, if reasonable and not contrary to the plain language of the Plan or ERISA, shall be binding on all Participants, Employers, Employees, Beneficiaries and others.

(b)     The provisions of this Plan are designed and intended to comply with ERISA, as amended, and construction or interpretation of the Plan shall be adopted and be consistent with the Trust Agreement and with ERISA.

(c)     The Board of Trustees, or persons appointed or so designated by the Board, shall have the full discretionary authority to determine eligibility for benefits and construe the terms of this Plan, and any regulations issued hereunder.

(d)     If the Trustees determine or are advised that regulations, rulings, or Court action may determine an issue or dispute, the Trustees may defer action in making a determination hereunder for a reasonable period or until such time as they can determine what is a proper determination of that issue.

No person may rely upon any interpretation by any individual Trustee, Union officer or representative, Employer or any other person regarding the Plan benefits or otherwise. Any question of interpretation should be directed in writing to the Board of Trustees. No oral statement of any person, including a Plan official, may be the basis of any claim for benefits.

Section 4.09.  Maximum Annual Additions.  This Section is included in order to guarantee compliance with Section 415 of the Internal Revenue Code. It is not expected to have any practical effect on the benefits otherwise payable under the Plan.

(a)     General Limit.  Notwithstanding anything contained in this Section to the contrary, the total annual additions shall not exceed the lesser of $40,000 or 25 percent of the Participant's compensation for such Plan Year, except that such $40,000 shall be increased as permitted by Internal Revenue Service regulations to reflect cost-of-living adjustments. Notwithstanding the foregoing, the otherwise permissible annual additions for any

17

Participant under this Plan may be further reduced to the extent necessary, as determined by the Trustees, to prevent disqualification of the Plan under Section 415 of the Internal Revenue Code.

(b) <u>Definitions</u>. As used in this Section 4.09 the following terms shall have the following meanings:

    (1) <u>Annual Addition</u>, with respect to a Participant for a Fiscal Year, means the sum of the following amounts credited to the Participant's account(s), if any, under any other defined contribution plan(s) maintained by the Employer:

        A.    Employer contributions, and

        B.    any forfeitures allocated to an Individual Account, and

        C.    amounts allocated to an Individual Medical Account as defined in the Internal Revenue Code.

    (2) <u>Compensation</u> means all earnings and any other taxable compensation received for a year from any employer, or from any company in an employer's controlled group or affiliated service group within the meaning of Section 414(b), (c) or (m) of the Internal Revenue Code.

(c) <u>Combined Plan Limits</u>. Notwithstanding any other provision of this Plan, if the Participant is or has been covered under a defined benefit pension plan maintained by the same Employer, the benefit payable with respect to such other defined benefit pension plan shall be reduced to the extent necessary to make certain that the total amounts payable with respect to him under the Plan and such other plan do not exceed the limitations prescribed in Section 415(e) of the Internal Revenue Code.

(d) <u>Protection of Prior Benefits</u>. For any year before 1986, the limitations prescribed by Section 415 of the Internal Revenue Code as in effect before enactment of the Tax Equity and Fiscal Responsibility Act of 1982 shall apply, and no pension earned under this Plan prior to 1986 shall be reduced on account of the provisions of this Section 4.09 if it would have satisfied those limitations under the prior law.

Section 4.10. <u>Merger or Consolidation</u>. In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, the amount of benefits which a Participant would receive upon a termination of the Plan immediately after such merger, consolidation, or transfer shall be no less than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer if the Plan had been terminated.

Section 4.11. <u>Plan Amendment</u>. The Board may amend or modify the Plan at any time in accordance with the Trust Agreement, except that no amendment or modification may reduce any benefits which have been approved for payment prior to amendment, so long as funds are available for payment of such benefits, nor may an amendment or modification reduce an Employee's Individual Account other than for losses in the Trust Fund.

Section 4.12. Plan Termination. In the event of termination or partial termination of the Plan, the assets then remaining, after providing for the expenses of the Plan and for the payment of any Accumulated Share theretofore approved, shall be distributed among the Participants. Each Participant shall receive that part of the total remaining assets in the same ratio as his Accumulated Share bears to the aggregate amount of Accumulated Shares of all Participants. No part of the assets shall be returned to any Employer or inure to the benefit of any Individual Employer, Employer Association or the Union.

Section 4.13. Top-Heavy Requirements. To the extent required by law, the Plan shall comply with the Top-Heavy requirements of Internal Revenue Code Section 416 and applicable regulations issued thereunder. Such provisions are incorporated herein by this reference.

Section 4.14. Coverage and Participation Requirements. To the extent applicable for this Plan, the Plan shall comply with the Internal Revenue Code's minimum coverage and participation requirements for qualified pension plans and not favor highly compensated employees. The Plan shall comply with Internal Revenue Code Sections 401(a)(4), 401(1)(26), and 401(b) and other pertinent provisions, and regulations issued thereunder. To the extend required, such provisions and regulations are incorporated herein by this reference.

Section 4.15. Miscellaneous. Whenever any words are used in this Plan in the masculine gender, they should be construed as though they were also used in the feminine gender in all situations where they would so apply. Wherever any words are used in this Plan in the singular form they should be construed as though they were also in the plural form in all situations where they would so apply, and vice versa.

Section 4.16. Effective Date. The restated Plan is effective on January 1, 1995. Certain provisions have a different effective date as required by the Internal Revenue Code or as is otherwise provided herein.

Section 4.17. No Reversion to Employers. The contributions and all funds of the Plan are to be administered, maintained, invested, and handled for the sole and exclusive benefit of the Participants and their Beneficiaries. Other than the payment of any reasonable lawful expenses of the Plan and any lawful refund of money to an Employer, there shall be no reversion of any of the assets of this Plan to any contributing Employer.

Section 4.18. Release of Trust. Payments to any Participant or Beneficiary in accordance with this Plan and in satisfaction of his rights hereunder shall constitute a release and discharge of all further claims against the Trust, the Board of Trustees, the Union, the Association and the Employers.

If the person entitled to receive payments is a minor or incompetent, whether or not so adjudicated, the Board may direct that such payments be made for the benefit of such minor or incompetent to whomsoever may be acting as his parent or legal or natural guardian, or any other person the Trustees deem appropriate to receive such funds. Receipt by such person to whom such payment is made shall be a complete discharge to the Trust, the Board, the Union, the Association and the Employers hereunder for any sums so paid.

Section 4.19.  Laws Applicable.  This Plan is intended to comply with the Employee Retirement Income Security Act of 1974 and with the requirements for tax qualification under the Internal Revenue Code and all regulations thereunder, and is to be interpreted and applied consistent with that intent.

ARTICLE 5. *RESERVED*

_____
John Madole, Chairman

Date _____ 5 / 21 / 02 _____

_____
Robert Curtis, Co-Chairman

Date _____ 5 / 21 / 02 _____

This last sentence of **Section 4.14.** is revised to read:

To the extent required, such provisions and regulations are incorporated herein by this reference.

Effective October 1, 2003 Section 3.02.(a) is revised to read:

Section 3.02.  Payment of Accumulated Share.

(a)  In the event that an Employee Retires, the amount in his Individual Account, if any, shall be paid to the Employee, in accordance with Section 3.03 of the Plan. *Distribution of a Participant's account prior to age 65, except on account of disability, shall be made only once.*  Retirement by an Employee shall be established by:

   (1)  Attainment of age 58 and application for Retirement to the Board of Trustees, or

   (2)  Regardless of age, there have been no Contributions to the Employee's Individual Account for ten consecutive calendar years, subject to the limitations of Subsection 3.02.(c) and Section 4.04., or

   (3)  Entitlement to a Social Security Disability Benefit, or

   (4)  Attainment of age 65 and application for Retirement to the Board of Trustees, if a payment was made under (1) or (2) above.

Approved:

_____          _____
Chairman

_____          _____
Co-Chairman

AMENDMENT NUMBER 3
To the Revised Plan For The
CEMENT MASONS ANNUITY TRUST FUND
OF NORTHERN NEVADA
(Restated Effective June 1, 2010)

Effective June 1, 2010, the following revision was made:

**DELETE** – (2) Regardless of age, there have been no contributions to the Employee's Individual Account for ten consecutive calendar years, subject to the limitations of Subsection 3.02 (c) and Section 4.04; or

Section 3.02 Payment of Accumulated Share should read as follows:

(a) In the event that an Employee Retires, the amount in his Individual Account, if any, shall be paid to the Employee, in accordance with Section 3.03 of the Plan. Distribution of a Participant's account prior to age 65, except on account of disability, shall be made only once. Retirement by an Employee shall be established by:

    (1) Attainment of age 58 and application for Retirement to the Board of Trustees, or

    (2) Entitlement to a Social Security Disability Benefit, or

    (3) Attainment of age 65 and application for Retirement to the Board of Trustees if a payment was made under (1) above.

Approved:

_____
Chairman

_11-15-10_
Date

_____
Co-Chairman

_11-15-10_
Date

Amendment Number 3 Cement Masons Eff. 6/1/10

**EXHIBIT 2**

CEMENT MASONS ANNUITY TRUST FUND OF NORTHERN NEVADA
445 APPLE STREET   P.O. BOX 11337   RENO, NEVADA 89510
TELEPHONE (775) 826-7200


GRIFFIN JOHNNIE                    3483                    DATE OF BIRTH
P O BOX 6436                                               5/23/1968
INCLINE VILLAGE      NV 89450


STATEMENT DATE:    7/16/10

PARTICIPANTS STATEMENT FOR THE PLAN YEAR ENDING MAY 31,2010

| EMPLOYER | DATE RECEIVED | MONTH WORKED | HOURS | RATE |
|----------|---------------|--------------|-------|------|
|          |               |              | .00   | **   |


BEGINNING BALANCE:         33,783.39
CONTRIBUTIONS:                   .00
NET INVESTMENT INCOME:       3,621.44
EXPENSE:                         .00
ENDING BALANCE:            37,404.83

BENEFIT PLAN ADMINISTRATORS, INC.
   ADMINISTRATIVE OFFICE

**EXHIBIT 3**

# Cement Masons Trust Funds
### For Northern Nevada

*445 Apple Street  *  P.O. Box 11337  *  Reno, Nevada 89510*
*(775) 826-7200*

January 23, 2009

TO:       Johnnie Griffin
          P O Box 6436
          Incline Vlg NV  89450-6436

FROM:     Cement Masons Annuity Trust Fund

RE:       Appeal for Release of Accumulative Share For
          Hardship

,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,

Your request to receive a Release of your Accumulative Share from the Trust Fund has
been denied by the Board of Trustees of the Cement Masons Annuity Trust Fund of
Northern Nevada.

The Board of Trustee carefully considered your request and identified the rules of the
Plan that apply to your appeal.  In accordance with **Section 3.02 (Payment of
Accumulated Share)** and all Subsections of the Plan it was determined that you would
not qualify.  Currently this Plan does not have a provision for a Hardship Distribution.  If
you have no further contributions, you will be eligible for your distribution January 2011.
Please obtain an application 60 days prior to you withdrawal.

A Summary Plan Document was previously sent to you for your review.

Benefit Plan Administrators, Inc
On Behalf of the Board of Trustees

**EXHIBIT 4**

# *Cement Masons Trust Funds*
### *For Northern Nevada*

*445 Apple Street * P.O. Box 11337 * Reno, Nevada 89510*
*(775) 826-7200*

November 17, 2010

TO:      Johnnie Griffin
          305 Valley Vista Dr.
          Dayton, NV 89403

FROM:    BOARD OF TRUSTEES

SUBJECT: APPLICATION FOR ANNUITY TRUST FUND

### NOTICE OF DENIAL

Your request for release of you Accumulative Share has been reviewed by the Board of Trustees. From the information contained in the records maintained on your behalf, the application has been denied. The Board of Trustees is unable to authorize a benefit for the following reason(s): you do not qualify under Section 3.02 Payment of Accumulated Share subsection (2). You will be eligible to collect your Accumulative Share upon reaching age 56. Please request an application at least 60-90 days prior to that date.

You may make written request for review of the denial, the appeal procedures are shown in Section 4.03 of the Plan booklet.

Respectfully submitted,

Benefit Plan Administrators, Inc.
Administrator, On Behalf of the
Board of Trustees

Enc